UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANUEL PENA,<br><br>    Plaintiff,<br><br>v.<br><br>EMERALD EQUITY GROUP LLC, EEG FC LP, EEG FC GP LLC, ARCHROCK, LLC, 312 W 114 LP, 320 MANHATTAN AVE LP, 350 MANHATTAN AVENUE LP, 320 MANHATTAN AVE REALTY LLC, DAILY MAINTENANCE 1 LLC, and THE CLEARSTONE GROUP, INC.,<br><br>    Defendants. | Civil Action No. 1:21-cv-07843<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff, Manuel Pena ("Plaintiff"), by and through his counsel, Trief & Olk, alleges as follows:

## INTRODUCTION

1. Plaintiff was an employee of Defendants, who own, operate, and/or manage numerous apartment buildings in Manhattan. Plaintiff was employed by Defendants as the building superintendent at 312 West 114th Street and performed janitorial and porter duties at 320 Manhattan Avenue, 350 Manhattan Avenue, and 416 East 115th Street.

2. This action arises out of Defendants' failure to comply with federal and state wage and hour laws. Defendants failed to pay Plaintiff the minimum wage and overtime wages he is due and failed to keep proper records.

3. Defendants' failure to pay proper wages and keep records constitutes willful violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

## PARTIES

4. Plaintiff Manual Pena is an adult individual and New York State resident who was employed by Defendants from 2018 to February 2021. He was employed by the previous owners of 312 West 114th Street since 2006 and continued working in that building until February 2021. Plaintiff was also responsible for operations at 320 Manhattan Avenue 350 Manhattan Avenue, and 416 East 115th Street, for some or all of the relevant time period. (The four buildings are referred to collectively as the "Buildings.")

5. Defendant Emerald Equity Group, LLC is a limited liability company organized under the laws of the State of New York, with its principal place of business at One Battery Park Plaza, Suite 3100, New York, New York 10280, which, through the entities listed in Paragraphs 9 - 11 below, owns and/or controls 312 W 114 LP, 320 Manhattan Ave LP, and 350 Manhattan Ave LP. Emerald Equity Group, LLC describes itself as a "vertically integrated real estate company with a team of over 100 employees who facilitate its acquisitions, dispositions, asset management, construction, accounting, leasing and property management." *See* http://www.emeraldequitygrp.com/about.html (last visited September 20, 2021). The company has a "diverse holdings portfolio numbering close to 7,000 residential units. . ." http://www.emeraldequitygrp.com/philosophy.html (last visited September 20, 2021). (Emerald Equity Group, LLC and the related entities set forth in Paragraphs 6 - 12 below are referred to herein as the "EEG Defendants")

6. Defendant 312 W 114 LP is a limited partnership organized under the laws of the State of New York, with its principal place of business at One Battery Park Plaza, Suite 3100, New York, New York 10280. 312 W 114 LP owns the apartment building at 312 West 114th

Street, New York, New York, where Plaintiff was employed from 2006 to 2021, and where he resided.

7.      Defendant 320 Manhattan Ave LP is a limited partnership organized under the laws of the State of Delaware, with its principal place of business at One Battery Park Plaza, Suite 3100, New York, New York 10280. 320 Manhattan Ave LP owns the apartment building at 320 Manhattan Avenue, New York, New York, where Plaintiff was employed from 2018 to 2021.

8.      Defendant 350 Manhattan Ave LP is a limited partnership organized under the laws of the State of Delaware, with its principal place of business at One Battery Park Plaza, Suite 3100, New York, New York 10280. 350 Manhattan Ave LP owns the apartment building at 350 Manhattan Avenue, where Plaintiff was employed from November 2019 to February 2021.

9.      Defendant EEG FC LP, is a limited partnership organized under the laws of the State of Delaware, with its principal place of business at One Battery Park Plaza, Suite 3100, New York, New York 10280.  It is the manager of EEG FC GP, LLC, which is the General Partner of 312 W 114 LP, 320 Manhattan Ave LP, and 350 Manhattan Ave LP.  EEG FC LP issued the paychecks to Plaintiff for his work at the Buildings, from October 2020 to February 2021.

10.     Defendant EEG FC GP LLC, is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at One Battery Park Plaza, Suite 3100, New York, New York 10280. It is the General Partner of 312 W 114 LP, 320 Manhattan Ave LP, and 350 Manhattan Ave LP.

11. Defendant 320 Manhattan Avenue Realty LLC is a limited liability company organized under the laws of the State of New York, with its principal place of business at 266 Broadway, Suite 602, Brooklyn, New York 11211. It is the General Partner of EEG FC LP.

12. Defendant Archrock, LLC ("Archrock"), is a limited liability company organized under the laws of the State of New York, with its principal place of business at One Battery Park Plaza, Suite 3100, New York, New York 10280, and was the property management company charged with oversight of the Buildings from 2018 to approximately October 1, 2020. Archrock LLC was also the agent for 312 W 114 LP, 320 Manhattan Ave LP, and 350 Manhattan Ave LP during the relevant time period.

13. Defendant Daily Maintenance 1 LLC ("Daily Maintenance") is a limited liability company organized under the laws of the State of New York, with its principal place of business at 177 West 126th Street, New York, New York 10027, which acted as the site manager for the Buildings from approximately November 22, 2019 to October 1, 2020, under the auspices of Defendant Archrock, and managed the building located at 416 East 115th Street.

14. Defendant The Clearstone Group, Inc. ("Clearstone") is a corporation organized under the laws of the State of New York, with its principal place of business at 917 Cliffside Avenue, Valley Stream, New York 11581, and was the property management company charged with oversight of the Buildings from October 1, 2020 to February 2021.

**VENUE AND JURISDICTION**

15. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

16. This Court has supplemental jurisdiction over Plaintiff's New York Labor Law claims pursuant to 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over Defendants because Defendants are New York-based corporations, which operate in the State of New York or are out-of-state entities that operate in the State of New York.

18. Venue is proper in this judicial district because, pursuant to 28 U.S.C. § 1391, Defendants Emerald Equity Group, LLC, 312 W 114 LP, 320 Manhattan Ave LP, 350 Manhattan Ave LP, EEG FC LP, EEG FC GP LLC, Archrock LLC, and Daily Maintenance 1 LLC are residents of this judicial district as entities subject to the Court's personal jurisdiction with respect to the civil action in question, and because the events or omissions giving rise to the claim occurred in this judicial district.

## COVERAGE UNDER THE FLSA AND NYLL

19. Throughout Plaintiff's employment, Defendants have continuously been an employer of multiple employees engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

20. Throughout Plaintiff's employment, Defendants were an enterprise covered by the FLSA and as defined by 29 U.S.C. §§ 203(r) and 203(s).

21. Throughout Plaintiff's employment, upon information and belief, Defendants had annual gross volume of sales made or business done of over $500,000 for each year in the relevant period.

22. Throughout Plaintiff's employment, Defendants had multiple employees including Plaintiffs engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

23. Throughout Plaintiff's employment, Defendants employed Plaintiff within the meaning of the FLSA and the NYLL.

24. Throughout Plaintiff's employment, he was an "employee" of Defendants as that term is used in 29 U.S.C. § 203(e)(1) and in the applicable regulations implementing the NYLL, 12 NYCRR § 141-3.2(a).

25. Throughout Plaintiff's employment, Defendants maintained control, oversight, and direction over the operations of the apartment buildings located at 312 West 114th Street, 320 Manhattan Avenue, and 350 Manhattan Avenue, including oversight of hiring and firing practices; setting hours and pay rates; oversight of the payroll; and other employment practices therein.

26. Upon information and belief, the EEG Defendants are a network of related entities that own and manage the Buildings, with joint and several liability for the violations of the FLSA and NYLL set forth below. From 2018 to October 2020, Plaintiff reported to employees of Defendant Archrock, an affiliate of the EEG Defendants, including Ari L/N/U, who assigned specific maintenance work to Plaintiff as jobs arose in the Buildings.

27. From November 2020 to February 2021, when Defendant Clearstone took over day-to-day management of the Buildings on behalf of the EEG Defendants. Defendant EEG FC LP became the entity that issued Plaintiff's payroll checks.

28. Thus, throughout the relevant time period, some or all of the EEG Defendants had direct responsibility for Plaintiff and/or controlled the entities that had such responsibility and benefited financially from the work Plaintiff provided. Further, Plaintiff's assigned work covered three Buildings that were controlled by EEG FC LP and EEG FC GP LLC for the

benefit of the entity at the top of the hierarchy, Defendant Emerald Equities Group, LLC, which boasts of its vertical integration across its related entities. *See supra* ¶ 5.

29. Further, Defendants Daily Maintenance and Clearstone are jointly and severally liable with the EEG Defendants. With day-to-day responsibility for management of the Buildings, these two entities have had responsibility for supervision of Plaintiff's hours and the tasks assigned to him, as well as the amount he was paid for this work. Moreover, Daily Maintenance assigned Plaintiff duties at 416 East 115th Street, a building it owned and/or managed.

## PLAINTIFF'S EMPLOYMENT HISTORY

30. From 2006 through February 2021, Plaintiff was employed as the live-in superintendent at 312 West 114th Street. He was employed in that position when the EEG Defendants purchased that building in 2017 and took control of its operations.

31. Plaintiff was responsible for repairs in the apartments, painting, plumbing, emptying garbage cans, moving garbage to bins to be transferred to the curb for pick-up by the sanitation trucks, and coordinating with outside vendors (such as exterminators).

32. Prior to November 2019, Plaintiff worked Monday through Friday, from 9:00 am to 5:00 pm, and occasionally had to respond to weekend calls for building emergencies. He was assisted at 312 West 114th by a weekday porter and a weekend porter, who primarily assisted with the duties associated with the trash area – moving trash into larger bins, moving bins to the curb, ensuring area near garbage cans was kept clean.

33. Plaintiff also occasionally performed work at another building owned by the EEG Defendants – 320 Manhattan Avenue.

34. Plaintiff was initially told he would receive a salary but the pay system then changed to an hourly pay rate. After that change, Plaintiff was required to record and report his hours. He received $20.63 per hour and $30.95 (*i.e.*, 1.5 times his regular rate) for any hours worked in excess of 40 hours per week.

35. In November 2019, Plaintiff's job duties and pay structure changed.

36. At that time, Defendant Daily Maintenance was engaged to oversee day-to-day operations at the Buildings, and several changes were made to Plaintiff's employment terms and conditions. Plaintiff did not receive written notice of any changes and did not consent to these changes.

37. Daily Maintenance and the EEG Defendants terminated the porter at 312 West 114th Street, thereby increasing Plaintiff's workload at that building. Additionally, they assigned Plaintiff the task of upkeep of another building, 350 Manhattan Avenue, with 54 apartment units, and tasks at 416 East 115th Street, a building that was owned and/or operated by Daily Maintenance.

38. To complete the additional work, Plaintiff began his work-day earlier, at 7:00 am, working until 5:00 pm on weekdays.

39. When the weekend porter position was eliminated at 312 West 114th Street, Plaintiff was required to do the work the porter had previously done. Plaintiff's hours then included four to five hours each weekend day, primarily to handle the garbage at these buildings.

40. In total, after the changes implemented in November 2019, Plaintiff worked a total of 60 hours per week on average.

41. Despite assigning Plaintiff more duties that required Plaintiff to work longer hours, Daily Maintenance and the EEG Defendants failed to pay Plaintiff for hours worked in

excess of 40 hours per week for several weeks at the end of 2019 and stopped paying Plaintiff overtime for hours worked in excess of 40 hours after the pay period ending March 12, 2020.

42. Additionally, for a portion of 2020, Plaintiff's pay was lowered to between $10.00 to $12.50 per hour. He was told that this pay reduction was related to Covid-19 but did not receive any written notice or explanation regarding the change in his employment terms, nor did he consent to this reduction in his pay.

43. In October 2020, Defendant Clearstone took charge of the building management, replacing Defendant Archrock and terminating Defendant Daily Maintenance.

44. Once again, Plaintiff's duties changes and his work hours increased. Plaintiff did not receive written notice of any changes and did not consent to these changes.

45. Plaintiff no longer was assigned duties at 350 Manhattan Avenue or 415 East 115th Street; however, in addition to working 50 hours per week performing his superintendent duties at 312 West 114th Street, Plaintiff was required to handle all of the duties related to ensuring the trash was properly collected from each floor, and then was bagged and placed outside for pick-up by the sanitation workers for two buildings: 312 West 114th Street, as well as 320 Manhattan Avenue. These tasks required another 15 hours of work per week, on average.

46. In total, from November 2020 to February 2021, Plaintiff worked approximately 70 hours per week

47. Throughout the relevant time period from November 2019 to February 2021 (the "Relevant Time Period"), Plaintiff was not paid the minimum wage required under NYLL nor was he paid an overtime premium for hours worked in excess of 40 in a workweek, as required under the FLSA and NYLL.

## DEFENDANTS' VIOLATIONS OF THE FLSA AND NEW YORK LABOR LAW

48. Throughout the Relevant Time Period, Plaintiff was a covered employee under the FLSA and New York Labor Law and was not exempt from the requirements thereunder, including minimum wage and overtime requirements.

49. Throughout the Relevant Time Period, Plaintiff was not paid the wages to which he was entitled.

50. Throughout the Relevant Time Period, Defendants were aware of Plaintiff's hours worked and rates of pay but willfully failed to pay the compensation Plaintiff was owed pursuant to the FLSA and NYLL.

51. Throughout the Relevant Time Period, Defendants willfully failed to pay Plaintiff at the governing minimum wage under the NYLL.

52. Throughout the Relevant Time Period, Plaintiff regularly worked in excess of forty hours in a week, averaging 20 hours of overtime each week from November 2019 to October 2020, and 30 hours of overtime from November 2020 to February 2021.

53. Because Plaintiff was a non-exempt employee, he was entitled to overtime pay at one-and-one-half times the regular rate for any hours worked in excess of 40 hours per week.

54. Despite requiring Plaintiff to work in excess of 40 hours per week throughout the Relevant Time Period, Defendants willfully failed to pay Plaintiff the overtime premium required under the FLSA and NYLL for hours worked in excess of 40 hours in a given week.

### Wage Notice and Wage Statement Violations

55. At the commencement of Plaintiff's employment by Defendants, Defendants failed to provide Plaintiff with statements of the scheduled hours and rate of pay as required by New York Labor Law.

56. Throughout the Relevant Time Period, Defendants failed to furnish Plaintiff with accurate, written wage statements listing, *inter alia*, rate or rates of pay and basis thereof; gross wages; net wages; regular hourly rate; overtime rate; number of regular hours worked; and the number of overtime hours worked, in violation of New York Labor Law.

57. Any wage statements that were provided by Daily Maintenance were not accurate; and statements provided by EEG FC LP did not list hours worked or any taxes deducted, but instead showed a flat dollar amount for the week, in violation of the requirements of New York Labor Law.

## CAUSES OF ACTION

### COUNT I
### FAILURE TO PAY OVERTIME IN VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (29 U.S.C. § 201, *et seq.*)

58. Plaintiff realleges and incorporates paragraphs 1-57 as if fully set forth herein.

59. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff.

60. Plaintiff worked in excess of 40 hours during most or all workweeks in the Relevant Time Period.

61. As a non-exempt employee, Plaintiff was entitled to be paid an overtime premium at one-and-one-half times his regular hourly rate for all hours worked in excess of 40 hours per workweek, as set forth under the FLSA.

62. Defendants failed to pay Plaintiff one-and-one-half times minimum wage or his regular rate of pay for all work in excess of 40 hours per workweek.

63. The conduct of Defendants constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

64. Because the conduct of Defendants was willful, a three-year statute of limitations applies, pursuant to 20 U.S.C. §§ 201, *et seq*.

65. Due to these FLSA violations, Plaintiff was damaged and is entitled to recover from Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, and expenses of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## FAILURE TO PAY MINIMUM WAGE AND
## FOR ALL HOURS WORK IN VIOLATION OF NYLL
## (NYLL §§ 191 and 650 *et seq*.)

66. Plaintiff realleges and incorporates paragraphs 1-57 as if fully set forth herein.

67. During the Relevant Time Period, Plaintiff was paid at a weekly rate that resulted in an effective hourly rate less than the applicable minimum wage under NYLL.

68. During the Relevant Time Period, Defendants willfully failed to pay Plaintiff at least minimum wage for all hours worked as required by NYLL §§ 191 and 652.

69. Due to Defendants' NYLL violations, Plaintiff was damaged and is entitled to recover from Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, expenses of this action, and pre- and post-judgment interest, pursuant to NYLL § 198.

## COUNT III
## FAILURE TO PAY OVERTIME IN VIOLATION OF NYLL
## (NYLL §§ 198 and 650, *et seq.*; and 12 NYCRR § 141-1.4)

70. Plaintiff realleges and incorporates paragraphs 1-57 as if fully set forth herein.

71. As a non-exempt employee, Plaintiff was entitled to be paid an overtime premium at one-and-one-half times his regular hourly rate for all hours worked in excess of 40 hours per workweek, as set forth under NYLL § 652 and 12 NYCRR § 141-1.4.

72. Throughout Plaintiff's employment with Defendants, Defendants willfully failed to pay Plaintiff at the overtime rate for hours worked in excess of 40 hours per workweek as required by NYLL.

73. Due to Defendants' NYLL violations, Plaintiff was damaged and is entitled to recover from Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, expenses of this action, and pre- and post-judgment interest, pursuant to, pursuant to NYLL § 198.

## COUNT IV
## FAILURE TO FURNISH WAGE NOTICE IN VIOLATION OF
## NEW YORK WAGE THEFT PREVENTION ACT
## (NYLL §§ 195(1), 198)

74. Plaintiff realleges and incorporates paragraphs 1-57 as if fully set forth herein.

75. At the commencement of Plaintiff's employment with Defendants, Defendants failed to provide Plaintiff with a written notice of the applicable rate of pay, regular pay day, and such other information as required by the Wage Theft Prevention Act, NYLL § 195(1).

76. Due to Defendants' NYLL violations, Plaintiff was damaged and is entitled to recover from Defendants damage as provided by NYLL § 198 for these wage statement violations, together with attorneys' fees and costs.

## COUNT V
## FAILURE TO FURNISH WAGE STATEMENTS IN VIOLATION OF
## NEW YORK WAGE THEFT PREVE1987NTION ACT
## (NYLL §§ 195(3), 198, and 650 *et seq.*; and 12 NYCRR § 141-2.2)

77. Plaintiff realleges and incorporates paragraphs 1- 57 as if fully set forth herein.

78. Throughout Plaintiff's employment, Defendants failed to furnish Plaintiff with accurate, written wage statements listing, *inter alia*, hours worked (including regular hours and overtime hours); rates paid; gross wages; allowances, if any, claimed as part of the minimum

13

wage; deductions; and net wages, as required by the Wage Theft Prevention Act, NYLL § 195(3) and 12 NYCRR § 141-2.2.

79. Due to Defendants' NYLL violations, Plaintiff was damaged and is entitled to recover from Defendants damage as provided by NYLL § 198 for these wage statement violations, together with attorneys' fees and costs.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the relief to which he is entitled and:

- A. On the first and third claim for relief, an award of compensation for unpaid overtime compensation for unpaid wages to Plaintiff;
- B. On the second claim for relief, an award of compensation for unpaid minimum wages at the applicable New York minimum wage rate to Plaintiff;
- C. On the fourth and fifth claim for relief, an award of statutory damages as applicable pursuant to New York Labor Law to Plaintiff;
- D. An award of liquidated damages to Plaintiff;
- E. An award of prejudgment and post-judgment interest to Plaintiff;
- F. An award of costs and expenses of this action together with reasonable attorneys' fees, costs, and expenses of litigation to Plaintiff; and

      G.    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 20, 2021

                                **TRIEF & OLK**

By *Shelly L. Friedland*
    Shelly L. Friedland
    750 Third Avenue
    Suite 2902
    New York, NY 10017
    Tel: (212) 486-6060
    Fax: (212) 317-2946
    sfriedland@triefandolk.com
    *Attorneys for Plaintiff*